UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,

v.                                                                  Case No. 3:23-cr-88-MCR-HTC

D'MONTREY ANTAUN JAMES,

_____/

ORDER OF DETENTION

On October 27, 2023, the Court held a hearing on the government's oral motion for detention pursuant to Bail Reform Act of 1984, as amended, 18 U.S.C. § 3141, *et seq.* Based upon the information contained in the pretrial services report, the evidence presented at the hearing, and the arguments of counsel, the Court finds Defendant shall be detained pending trial because there are no conditions or combination of conditions which will reasonably assure the safety of the community.

I.   **The Bail Reform Act**

The Bail Reform Act of 1984 provides a framework for determining whether pretrial detention is appropriate. *See* 18 U.S.C. § 3142. Although under the Act only a limited group of offenders should be denied bail pending trial, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), the Act also reflects "the deep public concern ... about the growing problem of crimes committed by persons on release and the recognition that there is a small but identifiable group of particularly

dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community," *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985) (quotations omitted). "Congress has determined that [w]hen there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." *Id.* (quotations omitted) (alteration in original).

A court may release a defendant pending trial on appropriate conditions, *id.* § 3142(a)(2), or detain the defendant, *id.* § 3142(a)(4). *See Reno v. Koray*, 515 U.S. 50, 57 (1995). The court shall detain a defendant if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1); *United States v. King*, 849 F.2d 485, 488 (11th Cir. 1988). A finding of risk of flight must be supported by a preponderance of the evidence, while a finding of danger must be supported by clear and convincing evidence. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990).

"Clear and convincing evidence" entails more than a preponderance of the evidence, but less than evidence establishing a fact beyond a reasonable doubt. *Addington v. Texas*, 441 U.S. 418, 423-25 (1979); *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984) (clear and convincing evidence is evidence which induces "an

3:23-cr-88-MCR-HTC

abiding conviction that the truth of its factual contentions are 'highly probable'"). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *Chimurenga*, 760 F.2d at 405. Additionally, "danger to the community" does not refer to simply risk of physical violence; instead, it includes a danger that the defendant might engage in criminal activity that is a detriment to the community. *See United States v. Ingram*, 415 F. Supp. 3d 1072, 1077 (N.D. Fla. 2019) (collecting cases). Danger to the community, thus, includes "the harm to society caused by narcotic trafficking." *Id.*

Although the burden of proof generally falls on the government, when probable cause is established in certain cases, a rebuttable presumption of detention arises that no such conditions exist. *Id.* § 3142(e)(3). Those cases are identified in 3142(e)(3) and includes an offense "for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." *Id.* In a rebuttable presumption case, the defendant bears the burden of production – that is the burden of producing evidence to rebut the presumption. *See e.g., United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). While the burden is not a heavy one, even if it is met, the presumption nonetheless remains a factor for the court to consider. *See United States v. Stricklin*, 932 F.2d

3:23-cr-88-MCR-HTC

1354, 1355 (10th Cir. 1991).  Also, even in a rebuttable presumption case the burden of persuasion remains with the government.  *See id.* at 1354-55; *Mercedes*, 254 F. 3d at 436.

This is a rebuttable presumption case because Defendant is charged with three felony drug offenses, each of which carry a maximum term of imprisonment of 10 years.  ECF Doc. 22.  "The rebuttable presumption in 18 U.S.C. § 3142(e) exists to advance Congress' belief that those charged with serious drug crimes are necessarily a danger to the community and should be detained to protect the public, absent a showing by the defendant that he is not a danger to the community."  *United States v. Kidd,* 2013 WL 142317, at *3 (N.D. Ga. Jan. 11, 2013).

To determine whether a defendant should be released on conditions or detained, courts consider the following factors:  (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  Although § 3142(g) identifies the factors the courts should consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant.  *See generally* 18 U.S.C. § 3142(g).  Instead, the weight given to each factor will inevitably vary from case to case and might even vary depending

on whether the inquiry relates to a defendant's danger or to his risk of flight. *United States v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

## II. ANALYSIS

### A. Nature and Circumstances of the Offense Charged.

When considering the nature and circumstances of the offense, the court considers "whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant has been indicted by the grand jury for three drug offenses: one count of conspiracy to distribute and possession with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a controlled substance mixture containing methamphetamine and two counts of possession with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a controlled substance mixture containing methamphetamine. ECF Doc. 1.

The possession, use, and distribution of illegal drugs represent "one of the greatest problems affecting the health and welfare of our population." *Treasury Employees v. Von Raab*, 489 U.S. 656, 668 (1989). Drug distribution causes "grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (Kennedy, J., concurring in part). A "seller of addictive drugs may inflict greater bodily harm upon members of society than the person who commits a single assault." *Rummel*

3:23-cr-88-MCR-HTC

*v. Estelle*, 445 U.S. 263, 296 n.12 (1980) (Powell, J., dissenting).  Therefore, "an indictment for a drug trafficking offense is strong evidence that the defendant is a risk to the community."  *United States v. Allen*, 891 F. Supp. 594, 599 (S.D. Fla. 1995).  Furthermore, studies "demonstrate a direct nexus between illegal drugs and crimes of violence."  *Harmelin*, 501 U.S. at 1003, 111 (Kennedy, J., concurring).

Thus, the Court finds the nature and circumstances of the offenses charged weigh in favor of detention.

  B.  <u>Weight of the Evidence</u>.

This factor requires the district court to consider evidence proffered by the government which it intends to use at Defendant's trial.  In considering the weight of the evidence, the court considers both the weight of the evidence of dangerousness and the government's underlying case against the defendant.  *United States v. Berkun*, 392 F. App'x 901, 903 (2d Cir. 2010); *United States v. Norris*, 188 F. App'x 822, 830 (11th Cir. 2006).  "While it is true that the Court's determination of this factor 'neither requires nor permits a pretrial determination of guilt,' the Court can still weigh the evidence and determine whether it proves that the defendant poses a risk to others and/or is at risk of flight."  *United States v. Slatten,* 286 F. Supp. 3d 61, 67–68 (D.D.C. 2017) (internal citations omitted), *aff'd,* 712 F. App'x 15 (D.C. Cir. 2018); *United States v. Pirk,* 220 F. Supp. 3d 402, 410 (W.D.N.Y. 2016).

3:23-cr-88-MCR-HTC

The weight of the evidence is a common-sense consideration. For instance, if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate the defendant is a present danger to himself or the community if the government's allegations later prove to be true. Alternatively, if the only evidence against a defendant is circumstantial, contradicted, or unreliable, the defendant has less reason to duck court proceedings in the interest of proving his innocence and that evidence does not support viewing the defendant as a risk to the safety of the community. As such, the weight of the evidence against Defendant will be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate. *United States v. Blackson*, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023).

At the detention hearing, the government proffered the following evidence:

- Law enforcement intercepted several calls in 2021 involving Defendant in which Defendant is discussing drug activity, including discussions about a package that was intercepted and seized by the postal service. *See* Gov't. Exh. 1a-1f. That package, intercepted on October 14, 2021, contained 10.42 lbs. of methamphetamine. *See* Gov't Exh. 2.

- The U.S. Postal Service also intercepted a package on March 21, 2022, which was searched on March 25, and contained 3.04 lbs. of methamphetamine. *See*

3:23-cr-88-MCR-HTC

Gov't. Exh. 3.  Defendant's vehicle was tracked to the area where the package was to be delivered.  The government also intercepted calls involving Defendant, during which the intercepted package was discussed.  *See id.*

- Law enforcement conducted a search of Defendant's residence and his mother's residence on May 25, 2022.  During that search, law enforcement seized over $11,000 that the government believes came from drug activity.

The weight of the evidence, therefore, is substantial.

C. The History and Characteristics of the Defendant.

In considering the history and characteristics of a defendant, the court considers such matters as the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.  18 U.S.C. § 3142(g).

Defendant is 35 years old and has lived in Pensacola, Florida his entire life.  Currently, he lives with his wife and their five children in a residence owned by his wife's grandmother.  Defendant's immediate family also resides in Pensacola.  Defendant has his GED.  Defendant reported being unemployed.  Defendant's wife works at Walmart and earns $1300 a month.

Defendant proffered at the hearing that he was only unemployed because he quit working to obtain a commercial driver's license, which he got two weeks ago. Defendant proffered that he has two businesses, DJ Maintenance, which opened last year, and D. James Logistics LLC, a moving company, which he started in 2019. A review of the Secretary of State's online records, however, shows that both these companies are inactive.

Defendant also reported suffering from high blood pressure, asthma, and having lung issues. He reported a recent emergency room visit for chest pains, and that he had a follow up visit coming up. Defendant's wife, however, reported Defendant being in "pretty good" physical health and was not aware of a visit to the emergency room.

Defendant denied using illegal substances during his interview with Probation, but also stated he did not know if he would be positive because he may have been exposed to some secondhand smoke from other marijuana users.

Defendant's criminal history begins at the age of 15, and when he was 16 (and again at 17), Defendant was charged with and subsequently pled no contest to violating driver's license restrictions. He was placed on probation, but was subsequently adjudicated guilty of violating the probation. He was charged with battery in 2008, and subsequently pled no contest to that charge as well. At the age of 24, Defendant was charged with and subsequently pled no contest to accessory

3:23-cr-88-MCR-HTC

after the fact to a capital felony in 2013. For that offense, Defendant was sentenced to 48 months in state prison. Defendant explained the accessory after the fact to a capital felony charge involved Defendant taking someone who was involved in a shooting to the hospital. In 2017, Defendant was charged with and subsequently pled no contest to possession of a controlled substance and was sentenced to 36 months' probation. Defendant was charged in 2020 and 2021 with battery on his wife, but neither of those charges were prosecuted because the wife did not cooperate.

Defendant argues his lack of a significant criminal history weighs in favor of release. The government, however, argues Defendant should be detained because he continued to engage in drug trafficking activity after the May 2022 search of his residence and his mother's residence. Specifically, the government proffered that a confidential source has reported seeing Defendant in a vehicle with a source of drugs from California within the last couple of months.

The Court finds the government has established by clear and convincing evidence that Defendant's release poses a serious risk of harm. Defendant's employment status is unclear, at best. Yet, he has five kids and his wife makes only $1300 a month. Defendant reported his companies were inactive because he had not paid the $400 annual fee; however, as stated above, the government seized over $11,000 in cash from Defendant in May.

Also, Defendant's criminal history is not free from violence. Defendant was charged with battery on his wife on two occasions. Defendant was also associated with someone who had been charged in a shooting, and was charged as an accessory after the fact in that crime. Moreover, it cannot be disputed that drug dealing is "a violence-prone business." *United States v. Lane*, 252 F.3d 905, 907 (7th Cir. 2001); *see United States v. Caro*, 597 F.3d 608, 624 (4th Cir. 2010) ("[I]llegal drugs have long and justifiably been associated with violence."); *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988) (noting that "the illegal drug industry is, to put it mildly, a dangerous, violent business"). Undoubtedly "society is endangered when courts release those individuals into the community whose past conduct indicates that they are likely to possess, control or distribute controlled substances." *United States v. Anderson*, 670 F.2d 328, 330-31 (D.C. Cir. 1982). "[D]rug offenders pose a special risk of flight and dangerousness to society." *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992).

Defendant did not offer any evidence to counter the government's showing that Defendant continues to possess the means and the ability to traffic in controlled substances. Defendant, however, did offer multiple letters of support from Defendant's family and friends. *See* Defendant's Exh. 1-7. While these letters show that Defendant is involved in the community, is helpful to his neighbors, and is loved by his kids, they do not, alone, outweigh the serious nature of the crime charged and

3:23-cr-88-MCR-HTC

the substantial weight of the government's evidence against Defendant. *See United States v. Perez,* 2022 WL 3701174, at *3 (W.D. Va. Aug. 26, 2022) (detaining defendant alleged to have been involved in a serious drug conspiracy despite considerable ties to family and community and no established criminal or serious drug history); *United States v. Marquez*, 2011 WL 232421, at *3 (S.D. Fla. Jan. 24, 2011) ("The Defendant's participation in the drug trade demonstrates Defendant's disregard for the well-being of the community since the purchase and sale of addictive and dangerous controlled substances is inherently harmful to society.").

        D. <u>The Nature and Seriousness of the Danger Posted by Release</u>.

The Court finds there is a serious danger that, if released, Defendant will continue to return to drug trafficking to support himself. *See United States v. Martin*, 2017 WL 4080689, at *3 (S.D. Ga. Sept. 14, 2017) ("Congress has recognized that those in the drug 'business'—entrepreneurs like this defendant—'pose a significant risk of pretrial recidivism.'"). Indeed, the government has proffered evidence showing Defendant did so after the May search and seizure. It is reasonable, therefore, to assume Defendant would continue to traffic in drugs if released. *See United States v. Knight*, 636 F.Supp.1462, 1467 (S.D. Fla. 1986) ("In light of the fact that Knight continued to play an integral role in the sale of narcotics even after the arrest of Joseph, it is reasonable to assume that Knight would continue do so if

released."). The risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of the community. *King*, 849 F.2d at 487, n.2.

In determining whether detention is necessary, a court "makes a judgment about the persuasiveness of the evidence offered by each party[.]" *United States v. Clum*, 492 F. App'x 81, 85 (11th Cir. 2012) (citation omitted). While Defendant argues there are conditions which can be imposed, such as GPS monitoring or home detention, "there is virtually nothing that any person could do to prevent Defendant from engaging in drug trafficking if that is what []he set [his] mind to doing. It is not only possible for Defendant to continue to engage in the continued sale of narcotics from [his] home, it also is very probable." *United States v. Carter*, 2015 WL 541554, at *4 (M.D. Ga. Feb. 10, 2015); *see also United States v. Williams*, 2016 WL 2770883, at *3 (S.D. Ala. May 13, 2016) ("While defense counsel argued that electronic monitoring would adequately address the danger issue, the undersigned finds that such would not prevent Defendant's involvement with criminal activity if he were so inclined."). Here, based on the evidence proffered by the government, the Court finds Defendant has not overcome the presumption that no condition or combination of conditions will reasonably assure Defendant will not pose a danger to the community.

Accordingly, the Court **ORDERS** that Defendant be held in the custody of the Attorney General or his designated representative pending trial in this matter.

3:23-cr-88-MCR-HTC

The Attorney General or his designated representative shall, to the extent practicable, confine Defendant separate from persons awaiting or serving sentences or being held in custody pending appeal.  Defendant shall be afforded a reasonable opportunity to consult with counsel in private while in custody.  On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED this 30th day of October 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**